```
                            UNITED STATES DISTRICT COURT
                              DISTRICT OF CONNECTICUT
```

```
-------------------------------x
VICTOR VELASCO,                 :
                                :
          Plaintiff,            :
                                :
v.                              :
                                :  Civil No. 3:23-cv-419 (AWT)
RISHEBA VAUGHAN WILLIAMS;       :
TERRENCE PALMER; and LUIS       :
APONTE,                         :
                                :
          Defendants.           :
                                :
-------------------------------x
```

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Risheba Vaughan Williams, Terrence Palmer, and Luis Aponte have moved for summary judgment on the remaining claims in plaintiff Victor Velasco's Complaint (ECF No. 1) (the "Complaint"). See Initial Review Order (ECF No. 15). Defendant Vaughan Williams has moved for summary judgment on the plaintiff's Eighth Amendment excessive force claim and the plaintiff's Eighth Amendment deliberate indifference claim. Defendants Palmer and Aponte have moved for summary judgment on the plaintiff's First Amendment retaliation claims against each of them. For the reasons set forth below, the defendants' motion for summary judgment is being granted.

### I. FACTUAL BACKGROUND

"At all relevant times, Plaintiff, Victor Velasco was a sentenced inmate in the custody of the Connecticut Department of

Correction ('DOC')." Defs.' L.R. 56(a)(1) Statement of Undisputed Material Facts ("DSF") (ECF No. 67-19) ¶ 1. "In April 2020, and up to October 26, 2021, Plaintiff was housed at the Corrigan-Radgowski Correctional Center ('Corrigan')." Id. ¶ 2. "At all relevant times, Defendant, Risheba Vaughan Williams, was a DOC correction officer working at Corrigan." Id. ¶ 3. "At all relevant times, Defendant, Luis Aponte, was a DOC correction officer working at Corrigan." Id. ¶ 4. "At all relevant times, Defendant, Terrence Palmer, was a DOC lieutenant working at Corrigan." Id. ¶ 5.

"As of April 7, 2020, Corrigan had enacted a COVID-19 Operational Response Plan, during which the inmate's out-of-cell time was limited to thirty (30) minute increments for inmates to use the shower and make a phone call." Id. ¶ 8. "Plaintiff was housed in the 'SRG-PC' Unit on April 7, 2020." Id. ¶ 9. "At all relevant times, the 'SRG-PC' Unit conducted recreation by only allowing the occupants of one (1) cell out at a time." Id. ¶ 10. "On the evening of April 7, 2020, Officer Vaughan Williams, along with Officer Stephen Losty, were officers assigned to the SRG-PC Unit." Id. ¶ 11.

"On the evening of April 7, 2020, Plaintiff's cell door was opened at 8:45 pm to allow him and his cellmate out of their cell to use the phone and take a shower." Id. ¶ 12 (footnote omitted). "At all times, inmates, including Plaintiff, were

required to follow the directions given to them by staff regarding the time allotted to them for their out-of-cell recreation." Id. ¶ 13. "At all times, if an inmate was ordered to return to his cell without obtaining hot water because he had exceeded his allotted out-of-cell time, then the inmate was required to comply with that order." Id. ¶ 14.

"From 8:47 pm through 9:03 pm, Mr. Velasco used the telephone." Id. ¶ 15. "At 9:03 pm, Mr. Velasco entered the shower." Id. ¶ 16. "As of 9:15 pm, Mr. Velasco was still using the shower." Id. ¶ 17. "Mr. Velasco overheard Officer Losty announce that his time to use the shower was over." Id. ¶ 18. "Mr. Velasco did not exit the shower until 9:21 pm." Id. ¶ 19. "Upon exiting the shower at 9:21 pm, Mr. Velasco did not return to his cell." Id. ¶ 20. "From 9:21 pm to 9:22 pm, Mr. Velasco proceeded to dump the contents of his cup in the shower, and then proceeded over to the unit's hot water . . . pot." Id. ¶ 21.

"At 9:22 pm, for about 35 seconds, Officer Vaughan Williams and Mr. Velasco engaged in a verbal back-and-forth by the hot water pot." Id. ¶ 22. "After their back-and-forth, Officer Vaughan Williams grabbed for Mr. Velasco's left wrist and arm, then pushed him away from the hot water pot and up towards a wall." Id. ¶ 23. "At 9:23, a code was called by Officer Losty at the direction of Officer Vaughan Williams to request assistance

in the unit from other staff." Id. ¶ 24. "While the code was being called, Officer Vaughan Williams used her weight to keep Mr. Velasco up against the wall while she also tried to secure his hands behind his back." Id. ¶ 25. "Officer Vaughan Williams did not punch, kick or deliver any strikes to Mr. Velasco." Id. ¶ 26. "Officer Vaughan Williams did not deploy chemical agent on Mr. Velasco." Id. ¶ 27. "Once the code was called, staff arrived in approximately fifteen seconds to aid Officer Vaughan Williams in stabilizing Mr. Velasco and securing him for transfer to the restricted housing unit ('RHU')." Id. ¶ 29.

"At all relevant times, DOC Administrative Directive No. 9.6 provided DOC inmates, including Mr. Velasco, an administrative remedy process to report any concerns with the conditions of their confinement." Id. ¶ 49. The administrative remedies for the DOC are set forth in Administrative Directive 9.6 ("A.D. 9.6"). The defendants submitted the version of A.D. 9.6 that was in effect at the times relevant to the Amended Complaint. See DSF Ex. Q (ECF No. 67-18) (Jacaruso Decl.), Attachment 1.

Under this version of A.D. 9.6, prior to filing a grievance, an aggrieved inmate is required to first seek informal resolution of his issues, initially verbally, and then if unsuccessful, in writing, using a CN 9601 Inmate Request

Form. See id. at 9,[1] 9.6(6)(A). Correctional staff are required to respond to an Inmate Request Form within fifteen business days of receipt. See id.

If an inmate does not receive a response to the written request within fifteen business days or if the inmate is not satisfied with the response to his request, the inmate can file a Level 1 Grievance using a CN 9602, Inmate Administrative Remedy Form. See id. at 10, 9.6(6)(C). The Level 1 Grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance, and the inmate must attach his CN 9601 Inmate Request Form containing the appropriate staff member's response or explain why the form is not attached. See id. The Unit Administrator must respond in writing to the Level 1 Grievance within thirty business days of his or her receipt of the grievance. See id. at 11, 9.6(6)(I). The grievance can be returned without disposition, rejected, denied, compromised, upheld, or withdrawn. See id. at 10, 9.6(6)(D).

After that, an inmate can appeal the decision on the Level 1 Grievance by filing a Level 2 Appeal within either five calendar days of the receipt of the decision with respect to the Level 1 Grievance, or within sixty-five days of the date of the

---

[1] The page numbers cited to in this ruling for documents that have been electronically filed refer to the page numbers in the header of the documents and not to the page numbers in the original documents, if any.

filing of the Level 1 Grievance if the inmate does not receive a timely response to the Level 1 Grievance. See id., 9.6(6)(K), (M). A Level 2 Grievance filed by an inmate confined in a Connecticut correctional facility is reviewed by the appropriate District Administrator, and a Level 2 Grievance filed by an inmate housed out-of-state is reviewed by the Director of Sentence Calculation and Interstate Management. See id., 9.6(6)(K)(1)-(2). A Level 2 Grievance reviewer must respond in writing within thirty days of receiving the Level 2 Grievance. See id., 9.6(6)(K). The response must include a statement of the remedy for a grievance, if upheld or compromised, or a statement of the reason a grievance is denied or rejected. See id. In certain circumstances, an inmate may also appeal the District Administrator's disposition of his Level 2 Grievance by way of a Level 3 Grievance, which is reviewed by the Commissioner of the DOC or his designee. See id., 9.6(6)(L).

"At all relevant times, a log of all administrative remedies filed at Corrigan was maintained." DSF ¶ 50. "Counselor Nicholas Jacaruso, the Administrative Remedies Coordinator ('ARC') at Corrigan, is the keeper of records of inmate administrative remedies, including grievances, and grievance appeals filed by inmates at Corrigan, pursuant to A.D. 9.6." Id. ¶ 51. "Counselor Jacaruso has inspected the grievance logs and administrative remedies on file at Corrigan for Mr. Velasco from

April 1, 2020 through October 1, 2020." Id. ¶ 52. "Over that time, Mr. Velasco only filed two (2) separate administrative remedies, which were assigned grievance numbers ('IGP numbers') 140-20-140 and 140-20-145, respectively." Id. ¶ 53. The former grievance concerned a dietary restriction that is unrelated to the claims in this case; the latter grievance concerned only the plaintiff's excessive force claim against defendant Vaughan Williams. See DSF Ex. Q (ECF No. 67-18) (Jacaruso Decl.), Attachment 2.

## II.  LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a). See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. See, e.g., Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce of Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge . . . ." Anderson, 477 U.S. at 255. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Id. As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and

which facts are irrelevant that governs." Id.

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant . . . and draw all reasonable inferences in [the non-movant's] favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990) (alteration in original)). Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (Calabresi, J., dissenting) (internal quotation marks omitted) (quoting W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990)).

Also, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," id., if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward

with specific facts showing that there is a genuine issue for trial," Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993) (emphasis, quotation marks and citations omitted). "Accordingly, unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41.

Because the plaintiff is proceeding pro se, the court must read the plaintiff's pleadings and other documents liberally and construe them in a manner most favorable to the plaintiff. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Moreover, because the process of summary judgment is "not obvious to a layman," Vital v. Interfaith Medical Ctr., 168 F.3d 615, 620 (2d Cir. 1999) (internal quotation marks and citations omitted), the district court must ensure that a pro se plaintiff understands the nature, consequences, and obligations of summary judgment. See id. at 620-21. Thus, the district court may itself notify the pro se plaintiff as to the nature of summary judgment; the court may find that the opposing party's memoranda in support of summary judgment provide adequate notice; or the court may determine, based on thorough review of the record, that the pro se plaintiff understands the nature, consequences, and obligations of summary judgment. See id.

The court concludes that here the plaintiff understands the nature, consequences and obligations of summary judgement. First, the defendant served the plaintiff with the notice to pro

se litigants required by Local Rule 56(b). Second, the defendant's memorandum states the nature and consequences of summary judgment. Third, although the plaintiff did not file an opposition to the defendants' motion for summary judgment, the plaintiff has filed an opposition to a motion for summary judgment in a separate action, demonstrating that he understands the nature, consequences and obligations of summary judgment. See Objection to Defendant's Motion for Summary Judgment, Velasco v. Phillips, 3:23-cv-591 (AWT) (Jan. 30, 2025) (ECF No. 59).

## III. DISCUSSION

There is no genuine issue of material fact with respect to any of the plaintiff's four claims. The plaintiff has failed to exhaust administrative remedies for three of his claims: a claim for deliberate indifference to his health and safety against defendant Vaughan Williams arising out of alleged damage to the plaintiff's walker during the altercation at issue, and two claims for First Amendment retaliation against defendants Palmer and Aponte. Although the plaintiff has exhausted administrative remedies for his excessive force claim against defendant Vaughan Williams, there is no genuine issue of material fact with respect to the objective element of that Eighth Amendment claim, and defendant Vaughan Williams is entitled to summary judgment. Therefore, the court does not address the subjective element of

the plaintiff's Eighth Amendment excessive force claim.

### A. Failure to Exhaust

The plaintiff has failed to administratively exhaust any of his claims other than his excessive force claim against defendant Vaughan Williams.

#### 1. PLRA Exhaustion Through A.D. 9.6

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust all administrative remedies prior to filing a federal lawsuit with respect to prison conditions. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"). The exhaustion requirement of Section 1997e(a) "applies to all inmate suits about prison life," Porter v. Nussle, 534 U.S. 516, 532 (2002), "even where the relief sought . . . cannot be granted by the administrative process." Woodford v. Ngo, 548 U.S. 81, 85 (2006) (citing Booth v. Churner, 532 U.S. 731, 734 (2001)).

"[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). Thus, to satisfy the exhaustion requirement, an inmate must avail themselves of "all steps that the [prison-grievance system] holds out, and do[] so properly."

Woodford, 548 U.S. at 90 (internal quotation marks and citation omitted).

An inmate's failure to exhaust administrative remedies is only excusable if the administrative remedies were not truly "available," i.e., the administrative remedy is "officially on the books" but not truly available in practice. Ross v. Blake, 578 U.S. 632, 643 (2016). There are three circumstances in which an administrative remedy is considered to be unavailable:

> [1.] when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates[;] . . .
> [2. when a procedure is] so opaque that it becomes, practically speaking, incapable of use[;] . . . [or]
> [3.] when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.[2]

Id. at 643-44.

Because "failure to exhaust is an affirmative defense," Johnson v. Rowley, 569 F.3d 40, 45 (2d Cir. 2009), it is the defendants' burden to prove that an inmate did not exhaust his claim prior to filing the action in court, see, e.g., Williams v. Priatno, 829 F.3d 118, 126 n.6 (2d Cir. 2016); Mago v. Finnucan, 2023 WL 4850673, at *2 (D. Conn. July 28, 2023). "Once this burden is met, the plaintiff must show that he did exhaust

---

[2] "The three circumstances discussed in Ross do not appear to be exhaustive[.]" Williams v. Priatno, 829 F.3d 118, 123 n.2 (2d Cir. 2016). However, "[i]n considering the issue of availability . . . the Court is [still] guided by these illustrations." Smith v. Perez, 2023 U.S. Dist. LEXIS 121258, 17 (D. Conn. Jul. 14, 2023).

his administrative remedies or that the administrative remedy is not available in practice." Wright v. Snyder, 2023 WL 6379451, at *4 (D. Conn. September 30, 2023). See also Smith v. Kelly, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) ("[O]nce a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability . . . .").

### 2. The Plaintiff Failed to Exhaust Available Administrative Remedies Under A.D. 9.6 for Three Claims

The defendants have produced evidence establishing that the plaintiff failed to exhaust his administrative remedies. The declaration from Correctional Counselor Jacaruso, the administrative remedies coordinator at Corrigan, shows the plaintiff did not file any grievances with respect to his claims other than his excessive force claim.

As a part of his duties, Jacaruso has access to, and is responsible for keeping, records of all inmate grievances and grievance appeals at their respective facilities. Jacaruso avers he conducted a review of Velasco's grievance records for any administrative remedies filed by the plaintiff between April 1, 2020 and October 1, 2020 and that review showed that Velasco filed two grievances.

One of these grievances related to the plaintiff's dietary restrictions, which are not at issue in this case. The other grievance properly exhausted the plaintiff's excessive force claim against defendant Vaughan Williams. Neither grievance concerned the plaintiff's claim for deliberate indifference to his health and safety against defendant Vaughan Williams, which alleges damage to the plaintiff's walker during the altercation at issue here. Nor did either grievance concern the plaintiff's First Amendment retaliation claims against defendants Palmer and Aponte.

Therefore, the defendants have met their initial burden of establishing that the plaintiff did not exhaust his administrative remedies with respect to any of these three claims. Thus, the plaintiff must show that a genuine issue exists as to whether he exhausted, or was excused from exhausting, his administrative remedies. The plaintiff has not done so.

As there is no genuine issue with respect to the fact that the plaintiff failed to exhaust his administrative remedies for these three claims, the defendants are entitled to summary judgment on these claims.

### B. Excessive Force

An inmate alleging excessive force in violation of the Eighth Amendment has the burden of establishing "two components—

one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Wilkins v. Gaddy, 559 U.S. 34, 37-38 (2010) (internal quotation marks omitted) (quoting Hudson v. McMillan, 503 U.S. 1, 9-10 (1992)). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts." Id. at 38.

In Boddie v. Schnieder, the court held that the plaintiff's "allegations of excessive force--that he was bumped, grabbed, elbowed, and pushed by [the defendants]--do not approach an Eighth Amendment claim." 105 F.3d 857, 862 (2d Cir. 1997). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). As the court explained in George v. County of Westchester:

> Courts in the Second Circuit have found that comparable uses of force--where a corrections officer forcefully shoves or pushes an inmate--are insufficient to satisfy the objective prong of an excessive force claim. See, e.g., Tavares v. City of New York, No. 08-CV-3782,

      2011 WL 5877550, at *5-6 (S.D.N.Y. Oct. 17, 2011) (holding that a pat frisk where the plaintiff was "forcefully 'compressed' against the wall" was not a violation of the Eighth Amendment and noting that "[c]ourts in this Circuit have routinely found such types of minimal injuries and pain insufficiently serious or harmful to satisfy the objective element of the Eighth Amendment analysis" (citing cases)), report and recommendation adopted, 2011 WL 5877548 (S.D.N.Y. Nov. 23, 2011); James v. Phillips, No. 05-CV-1539, 2008 WL 1700125, at *5 (S.D.N.Y. Apr. 9, 2008) (concluding that a guard's "shov[ing] of an inmate" constituted a de minimis use of force that could not give rise to a viable excessive force claim); Show v. Patterson, 955 F. Supp. 182, 192-93 (S.D.N.Y. 1997) (concluding that the alleged force--"pushing [the plaintiff] against the wall"--was "de minimis and thus not protected by the Eighth Amendment"); Bryan v. Admin. of F.C.I. Otisville, 897 F. Supp. 134, 137 (S.D.N.Y. 1995) ("The Second Circuit has deemed brief confrontations between prisoners and guards such as the pushing incident alleged here insignificant for Eighth Amendment purposes.").

No. 20-CV-1723 (KMK), 2021 WL 4392485, at *9 (S.D.N.Y. Sept. 24, 2021).

Here, in light of the surveillance video, there is no genuine issue as to the fact that Vaughan Williams and Velasco engaged in a verbal back-and-forth by the hot water pot; Vaughan Williams grabbed for Velasco's left wrist and arm, then pushed him away from the hot water pot and up towards a wall; and Vaughan Williams used her weight to keep Velasco up against the wall while she also tried to secure his hands behind his back. See DSF, EX. I (ECF No. 67-10), at 5:22:00-5:24:00.

Defendant Vaughan Williams pushed the plaintiff and held him against a wall. This conduct, without more, does not establish the objective prong of an Eighth Amendment excessive

force claim. See Tavares v. City of New York, No. 08-CV-3782, 2011 WL 5877550, at *5-6 (S.D.N.Y. Oct. 17, 2011) (holding that a pat frisk where the plaintiff was "forcefully 'compressed' against the wall" was not a violation of the Eighth Amendment); Show v. Patterson, 955 F. Supp. 182, 192-93 (S.D.N.Y. 1997) (concluding that the alleged force--"pushing [the plaintiff] against the wall"--was "de minimis and thus not protected by the Eighth Amendment")). The force which defendant Vaughan Williams used against the plaintiff was "not of a sort repugnant to the conscience of mankind." Wilkins, 559 U.S. at 38.

Therefore, defendant Vaughan Williams is entitled to summary judgment on the plaintiff's excessive force claim.

## IV. CONCLUSION

For the reasons set forth above, the defendants' Motion for Summary Judgment (ECF No. 67) is hereby GRANTED.

The Clerk shall enter judgment in favor of the defendants and close this case.

It is so ordered.

Dated this 3rd day of December 2025, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge